IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| **Horatio M. Jabari-Kitwala,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Case No.: GLS 22-0069 |
| ) | |
| **Montgomery County Public Schools,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OPINION**

This case is before the undersigned for all proceedings with the consent of the parties pursuant to 28 U.S.C. § 636(c). (ECF No. 12).

Plaintiff Horatio M. Jabari-Kitwala ("Plaintiff") brings this action against Montgomery County Public Schools. (ECF No. 1) ("Complaint"). Plaintiff advances three claims: (1) race discrimination (disparate treatment), in violation of 42 U.S.C. § 2000(e) *et seq.* ("Title VII"); (2) retaliation for engaging in a protected activity, in violation of Title VII; (3) race discrimination, in violation of 42 U.S.C. § 1983 ("Section 1983"); (4) negligence, in violation of Maryland law; (5) gross negligence, in violation of Maryland law; and (6) breach of contract, in violation of Maryland law. (*Id.*).

Pending before this Court is "Defendant's Motion to Dismiss Plaintiff's Complaint," (ECF No. 27) ("Motion"), filed by Defendant Board of Education for Montgomery County[1] ("Defendant" or "BOE"). Also pending is the Plaintiff's "Motion to Change Nomenclature of the Defendant," (ECF No. 30) ("Motion to Amend"). The issues have been fully briefed, *see* ECF Nos. 29, 30, 33, and this Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md.

---

[1] *See infra* Section IV.A.

2021). For the reasons set forth herein, Defendant's Motion is **DENIED IN PART, GRANTED IN PART**. Furthermore, Plaintiff's Motion to Amend is **GRANTED**.

## I. PROCEDURAL BACKGROUND

On September 29, 2021, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission. (ECF No. 27-2) ("Charge"). On January 10, 2022, Plaintiff filed this action against the Defendant. (ECF No. 1). On March 15, 2022, Defendant filed a notice of intent to file a motion to dismiss. (ECF No. 18). After letter briefing, the Court granted the Defendant's request and set forth the briefing schedule related to the Defendant's motion to dismiss. (ECF Nos. 22, 24, 25). On November 15, 2022, the Defendant filed the Motion, which Plaintiff opposed. (ECF No. 27; *see also* ECF No. 29, "Opposition"). On December 16, 2022, Plaintiff filed his Motion to Amend, seeking leave to amend the named defendant in the Complaint. On December 19, 2022, the Court issued an Order directing Defendant to respond to the Motion to Amend as part of its Reply in support of its Motion. (ECF No. 31). On December 23, 2022, Defendant filed its Reply. (ECF No. 33, "Reply").

## II. FACTUAL BACKGROUND[2]

Plaintiff, an African American male, is a schoolteacher with nearly thirty years of experience in education. (Complaint, p. 2). In 2020, Plaintiff worked as a schoolteacher for Paint Branch High School ("Paint Branch"), in Montgomery County Maryland. (*Id.*). Paint Branch High School is part of the Montgomery County Public School system and operates under the Montgomery County Board of Education. (*Id.*).

---

[2] Unless otherwise noted, the facts are taken from the Complaint, ECF No. 1, and are construed in the light most favorable to the non-moving party, Plaintiff. This Court assumes the facts to be true. *Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). In addition, when the Court cites to the exhibits, it is because they are incorporated into and/or integral to the Complaint. *Philips v. Pitt Cnty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

In October 2020, Paint Branch promoted a professional development group program to faculty and staff. (Complaint, p. 4). As part of the program, the staff and faculty would meet and be divided into groups and discuss "race matters." (*Id.*, p. 3). On October 28, 2020, Plaintiff learned that the professional development groups were going to be segregated on the basis of race, i.e., faculty and staff were going to be racially segregated, with one group being reserved for "whites only." (*Id.*, p. 4). Plaintiff immediately objected to the groups being racially segregated by sending a mass email to Paint Branch faculty, including the Paint Branch Principal, Dr. Mirshah Nayar ("Principal Nayar"). (*Id.*). In the email, Plaintiff argued that the groups should be multicultural and that there should not be an "all black" or "all white" group. (ECF No. 1-1, pp. 1-2). Plaintiff also sent a written request to Dr. Jack Smith, the superintendent of Montgomery County Public Schools, seeking admission into the "white only" racial group. (Complaint, p. 4). Thirty minutes after submitting this request, Paint Branch staff was notified by Victoria Kennick, the Central Office Administrator, that Black, Indigenous, and People of Color ("BIPOC") individuals would be allowed to join the "white only" racial group, but only as observers. (ECF No. 1-3, p. 1). One minute later, Plaintiff sent Ms. Kennick a message requesting full admission into the white only racial group but was denied. (Complaint, p. 4).

The racially segregated professional development groups met on five occasions: (1) October 28, 2020; (2) November 18, 2020; (3) December 2, 2020; (4) December 9, 2020; and (5) December 16, 2020. Despite voicing his objections and seeking admission to the "white only" group, Plaintiff was unable to join the "white only" group for any of the five sessions. (*Id.*, p. 5). After voicing his objections, Defendant implemented a "communication blackout," and ignoring Plaintiff's questions related to the racially segregated groups. (*Id.*). The Complaint does not set forth a period of time related to the "communication blackout."

On March 1, 2021, Paint Branch faculty and staff began to return to in-person activities and telework ended. (*Id.*, pp. 6-7). However, Plaintiff requested to continue teleworking due to urgent medical reasons. (*Id.*, p. 7). In support of this accommodation request, Plaintiff submitted three separate physicians' letters. (*Id.*). Initially, Paint Branch approved Plaintiff's request, and he was permitted to continue teleworking. (*Id.*). However, on April 23, 2021, Principal Nayar told Plaintiff that he had to return to in-person instruction or be placed on "No Pay Reported Status." (*Id.*, p. 5). On April 26, 2021, Paint Branch discontinued Plaintiff's ability to teach remotely, cutting off his access to the students and forcing Plaintiff to take sick days for the remainder of the semester. (*Id.*, pp. 6-7).

### III. STANDARD OF REVIEW

#### A. Motion to Dismiss for Failure to State a Claim

When a defendant files a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), that defendant is asserting that, even if you construe the facts advanced in the plaintiff's complaint as true, that complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss, then, a complaint must contain sufficient facts, and must state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 8(a); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (complaint must set forth enough facts as to suggest a "cognizable cause of action"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The purpose of Rule 12(b)(6) "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Velencia v. Drezhlo*, Civ. No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th

Cir. 2006)). In addition, when a plaintiff is *pro se*, his pleadings are held to a less stringent standard" and the court is "obliged to liberally construe [his] filings." *United States v. Brown*, 797 F. App'x 85, 89 (4th Cir. 2019); *Williams v. BTST Servs., LLC*, Civ. No. MJM-21-1732, 2023 WL 2585069, at *2 (D. Md. Mar. 21, 2023).

In general, when a motion is filed pursuant to Fed. R. Civ. P. 12(b)(6), a court cannot consider documents outside of the pleadings to resolve factual disputes. *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court may consider documents "attached or incorporated into the complaint," as well as documents attached to a motion to dismiss, "so long as they are integral to the complaint," *Philips*, 572 F.3d at 180, "and if the plaintiffs do not challenge authenticity." *Pasternak & Fidis P.C. v. Recall Total Info. Mgmt., Inc.*, 95 F. Supp. 3d 886, 894 (D. Md. 2015).

## IV.  DISCUSSION

Defendant advances several arguments in support of its Motion: (1) Plaintiff's Complaint should be dismissed because he named the Montgomery County Public Schools as the Defendant, which is not a distinct legal entity, and that the proper party is the Board of Education for Montgomery County; (2) Plaintiff's allegations prior to December 3, 2020, are time barred; (3) Plaintiff's retaliation claim must be dismissed because the "protected activity, which occurred on October 28, 2020, is time barred," Plaintiff fails to allege an adverse employment action, and Plaintiff fails to establish a causal connection between a protected activity and an adverse employment action; (4) Plaintiff's Section 1983 claim is precluded by his Title VII claim and Section 1983 does not apply to the BOE because Section 1983 only applies to "persons;" (5) Plaintiff's negligence claim is unsupported by any factual assertions; (6) Plaintiff's gross negligence claim must fail because the BOE retains state immunity against such claims; (7)

Plaintiff failed to allege facts to support his breach of contract claim; and (8) to the extent that Plaintiff seeks punitive damages, the BOE retains state immunity, so any claim for punitive damages must be dismissed. (Motion, pp. 5-11).

Plaintiff argues that: (1) the Court should not dismiss the Complaint due to the improperly named Defendant because the Plaintiff has filed a Motion to Amend, which renders Defendant's argument moot; (2) the events within the Complaint are not time barred; and (3) the Complaint contains adequate allegations to support his retaliation, negligence, gross negligence, and breach of contract claims, and such claims should not be dismissed. (Opposition, pp. 1-5). The Court will address these arguments in turn.

### A. Motion to Amend Complaint

The Defendant asserts that because "Montgomery County Public Schools" is not a distinct legal entity, the Complaint should be dismissed. (Motion, p. 5). In response, Plaintiff, through his Motion to Amend, seeks to amend his Complaint to name "Board of Education, Montgomery County Public Schools, Maryland," as the named defendant. (Motion to Amend, p. 1)

As a preliminary matter, the Court finds that the Defendant is correct, and that Montgomery County Public Schools is not a distinct legal entity. The proper name is "Board of Education for Montgomery County." *See Miller v. Montgomery Cnty. Pub. Schs.*, Civ. No. TJS-19-3067, 2020 WL 2097686, at *1 (D. Md. May 1, 2020). Accordingly, the Defendant's Motion shall be granted with respect to Plaintiff's claims against an entity called "Montgomery County Public Schools."

However, because the Court is obliged to liberally construe the pleadings of this *pro se* Plaintiff, *see Brown*, 797 F. App'x at 89, the Court will construe the Motion to Amend as a request to change the named defendant to its proper one, namely the Board of Education for Montgomery County.

A motion for leave to amend a pleading is governed by Fed. R. Civ. P. 15. Pursuant to Rule 15(a)(1), a party may amend his pleading once as a matter of course, so long as it is done within 21 days after serving the pleading, or 21 days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1)(A),(B). "In all other cases, a party may amend his pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Courts are encouraged to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Put another way, a court should deny a request to amend a pleading "only where it would be prejudicial [to the nonmoving-party], there has been bad faith, or the amendment would be futile." *Nourisan Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (quoting *HCMF Corp. v. Allen*, 238 F.3d 273, 276-77 (4th Cir. 2001)).

Having reviewed the docket and pleadings in this case, the Court finds that the Defendant will not be prejudiced by the proposed name-change amendment, that there has not been bad faith by the Plaintiff, nor would the amendment be futile. Accordingly, the Motion to Amend to allow a name change shall be granted.

For the purposes of resolving the remaining arguments in the Motion, then, the Court will exercise its discretion and treat the Motion as if the Plaintiff properly named the Board of Education for Montgomery County as the defendant in the Complaint. *See Lazarte v. Montgomery Cnty. Pub. Schs.*, Civ. No. DLB 20-1515, 2021 WL 5770281, at *4 (D. Md. Dec. 6, 2021).

### B. Title VII Claims
#### 1. Disparate Treatment

Defendant asserts that Plaintiff's disparate treatment race discrimination claim must be dismissed because the alleged adverse employment actions are time barred. Specifically, Defendant argues that any allegations of discrimination related to the professional development

7

group meetings that took place prior to December 3, 2020 are time barred because the meetings occurred more than 300 days before Plaintiff filed his Charge. (Motion, pp. 5-6).

Title VII prohibits employers from "discharge[ing] any individual, or otherwise … discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). This section of Title VII has "often been referred to as the 'disparate treatment" (or 'intentional discrimination') provision. . . ." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015). Plaintiff bears the burden of proving this claim *at trial* by a preponderance of evidence. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (emphasis supplied).

Typically, a plaintiff may prove intentional discrimination or disparate treatment at trial in one of two ways. First, by offering "'direct or indirect' evidence of discrimination under ordinary principles of proof." *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (internal citation omitted), *cert. denied*, 520 U.S. 1116 (1997). "Direct evidence" of discrimination must be "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc). If a plaintiff does not establish direct or circumstantial evidence of discrimination, a plaintiff can show a Title VII violation by utilizing the burden-shifting framework first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The elements for a prima facie case of discrimination in violation of Title VII are: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *See White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004); *McDonnell Douglas Corp. v.*

8

*Green*, 411 U.S. 792, 801 (1973). A plaintiff must allege facts showing that the plaintiff's status as a member of a protected class is the reason for the adverse employment action. *McCleary-Evans v. Md. Dep't of Transp.,* 780 F.3d 582, 585 (4th Cir. 2015). A plaintiff need not make a prima facie showing at the pleading stage; however, the plaintiff must submit a claim that allows a court to go beyond speculation. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002); *Staggers v. Becerra*, Civ. No. ELH-21-0231, 2021 WL 5989212, at *13 (D. Md. Dec. 17, 2021).[3]

Before filing suit under Title VII, a litigant must file a Charge with the EEOC within 300 days of the alleged conduct and receive a Right to Sue letter. *See* 42 U.S.C. § 2000e-5(f)(1); *see also Prelich v. Med. Res., Inc.*, 813 F. Supp. 2d 654, 661-62 (D. Md. 2011). An EEOC charge "defines the scope of the plaintiff's right to institute a civil suit." *Bryant v. Bell Atlantic Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002).

In addition, the law in the Fourth Circuit is clear that any discriminatory acts that occurred more than 300 days before the Charge is filed are procedurally barred. *Gilliam v. S.C. Dep't of Juv. Just.*, 474 F.3d 134, 139 (4th Cir. 2007).

In this case, Plaintiff filed a Charge, which Defendant attached as an exhibit to its Motion. (ECF No. 27-2). In performing its motion to dismiss analysis, the Court can, without running afoul of Fed. R. Civ. P. 12(d), look at the Charge. This is because courts frequently treat a charge as effectively part of a complaint. *See, e.g.*, *Rhodes v. Montgomery Cnty. Dept. of Corr. & Rehab.*, Civ. No. AW–12–03172, 2013 WL 791208, at *6 (D. Md. Mar. 1, 2013); *Betof v. Suburban Hosp., Inc.*, Civ. No. DKC–11–01452, 2012 WL 2564781, at *3 n. 6 (D. Md. June 29, 2012).

---

[3] The so called "*McDonnell Douglas*" framework is a proof scheme that a plaintiff must satisfy at trial, not at the pleading stage. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993). When evaluating whether a Rule 12(b)(6) motion should be granted, courts usually examine the elements of a *prima facie* claim under *McDonnell Douglas* to determine how adequately Plaintiff has advanced plausible factual allegations in a complaint. *Staggers*, 2021 WL 5989212, at *13.

The Charge was filed on September 29, 2021. (ECF No. 27-2). Because the Plaintiff filed his Charge on September 29, 2021, any allegations that occurred prior to December 3, 2020, are time barred. As such, the only allegations that Plaintiff makes in support of his disparate treatment claim that the Court will consider are his alleged exclusion from the "white only" professional development group meetings on December 9, 2020, and December 16, 2020. *See Gilliam*, 474 F.3d at 139.

As a preliminary matter, the Plaintiff pleaded that he is a member of a protected class; he is an African-American male. (Complaint, p. 2). Liberally construing Plaintiff's Complaint, the Court finds that Plaintiff plausibly alleged satisfactory job performance, as he is an educator with over 30 years of experience who has been an outspoken leader in encouraging multiculturalism and diversity. (Complaint, pp. 2-3).

However, the Court finds that Plaintiff's alleged exclusion from the "white only" racial groups during the professional development group meetings do not qualify as adverse employment actions for a disparate treatment claim. Adverse employment actions are limited to actions against an employee that have a "tangible effect on the terms and conditions of employment" such as a termination or demotion. *See Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999) (categorizing adverse employment actions as things like hiring, firing, failing to promote, or reassigning to a different position with significantly different responsibilities); *Yampierre v. Balt. Police Dep't*, Civ. No. ELH-21-1209, 2022 WL 3577268, at *26 (D. Md. Aug. 18, 2022) (same). Exclusion from meetings, however, are not adverse employment actions under the law. *Staggers*, 2021 WL 5989212, at *17 ("Exclusion from meetings does not, by itself, constitute an adverse employment action") (internal citations omitted). Thus, Plaintiff's exclusion from the "white only" professional

development group meetings that occurred on December 9, 2020 and December 16, 2020 cannot be considered to support Plaintiff's disparate treatment claim. *Id.*

Accordingly, even when viewing the facts in the light most favorable to Plaintiff, the Court finds that the Plaintiff has not adequately pleaded disparate treatment and the Motion is granted with respect to this claim.

### 2. Retaliation

Defendant also argues that any events that took place prior to December 3, 2020, are time barred with respect to Plaintiff's retaliation claim. Defendant further contends that the following allegations in the Complaint are time barred because they are undated: (1) Defendant ignored Plaintiff's questions regarding the segregated professional development groups, i.e., the "communication blackout;" (2) the Defendant denied Plaintiff's telework request which resulted in the loss of sick days and wages; and (3) the Defendant stopped Plaintiff from taking steps after denial of his telework to continue teaching some of his students, i.e., there was a "reversal of methodology." (Motion, p. 8; *see also* Complaint, p. 6).

In his Opposition, Plaintiff responds to the Defendant's argument by simply reciting the acts that Plaintiff contends were retaliatory. (Opposition, pp. 3-5).

Title VII prohibits an employer from retaliating against an employee because the employee opposed "any practice made an unlawful employment practice by [Title VII]," including complaining about discrimination to supervisors. *See* 42 U.S.C. § 2000e-3(a); *see also Romeo v. APS Healthcare Bethesda, Inc.*, 876 F. Supp. 2d 577, 588 (D. Md. 2012) (internal citation omitted). The elements of a retaliation claim under Title VII are: (1) engagement by a plaintiff in a protected activity; (2) adverse action by an employer against a plaintiff; and (3) a causal link between the

protected activity and the adverse action taken by the employer. *Sempowich v. Tactile Sys. Technology, Inc.*, 19 F.4th 643, 653 (4th Cir. 2021).

"Protected activity" falls into one of two categories: (1) opposition; or (2) participation. Protected activity under the "opposition" category includes informal protests related to an employment practice, such as voicing complaints or filing formal grievances. *Prosa v. Austin*, Civ. No. ELH-20-3015, 2022 WL 394465, at *31 (D. Md. Feb. 8, 2022). For an employee's conduct in the "opposition" category to be protected, the employee must show that: (1) he reasonably believes that the action he opposed constituted a Title VII violation; and (2) his conduct in opposition was reasonable. *Id.* Protected activity in the "participation" category includes an employee participating in an ongoing investigation or proceeding under Title VII. *Netter v. Barnes*, 908 F.3d 932, 938-39 (4th Cir. 2018).

An adverse employment action, in the context of a retaliation claim, extends beyond actions that have a tangible effect on the terms and conditions of employment. *Rodgers v Eagle All.*, 586 F. Supp. 3d 398, 446 (D. Md. 2022). Instead, the "adverse action" need only have some "direct or indirect impact on an individual's employment" such that a reasonable worker would be dissuaded from engaging in a protected activity. *Id.*

A plaintiff can establish a causal link between the protected activity and the adverse action at the pleading stage through two routes. *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021) (internal citations omitted). First, a plaintiff may establish the existence of facts that show that the protected activity caused the adverse action. *Johnson v. UPS, Inc.*, 839 F. App'x 781, 784 (4th Cir. 2021). Second, a plaintiff can establish that the "adverse act bears sufficient temporal proximity to the protected activity." *Id.* Generally, a period of longer than two months

between the protected activity and the adverse action "significantly weakens the inference of causation." *Roberts*, 998 F.3d at 128 (internal citation omitted).

In the Complaint, Plaintiff alleges that he voiced his opposition to the racially segregated professional development groups in writing to the entirety of the Paint Branch faculty and the school district's Superintendent, Dr. Jack Smith. (Complaint, p. 4). The Court finds that the Plaintiff engaged in a protected activity when he voiced his complaints. *See Prosa*, 2022 WL 394465, at *31. However, Defendant argues that because Plaintiff voiced his opposition on October 28, 2020, more than 300 days before the Plaintiff filed his Charge, the Plaintiff's retaliation claim must fail because his assertion of engaging in a protected activity is time barred.

The Court finds the Defendant's argument unavailing. The 300-day period rule precludes the Court from considering allegations of unlawful activity that took place more than 300 days prior to an individual filing a Charge. However, the Court is not precluded from considering Plaintiff's retaliation claim because he engaged in a *protected activity* more than 300 days prior to filing his Charge. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-110 (2002) ("[T]he charge [must] be filed … [within] 300 days after *the unlawful practice happened*….") (emphasis added); *Gilliam v. S.C. Dep't of Juv. Just.*, 474 F.3d 134, 139 (4th Cir. 2007) ("Any *discrete acts of discrimination* that occurred prior to the applicable limitations period are procedurally barred and cannot be used as a basis for recovery") (emphasis added).

There are three undated allegations ("remaining allegations"), two of which are analyzed here.[4] The Court finds unavailing Defendant's argument that the following two remaining allegations are time barred because they are undated: (1) Defendant's so-called denial of Plaintiff's

---

[4] *See* Section IV.B.2, p. 16, *infra,* for the Court's analysis related to the third "remaining allegation," the so-called "communication blackout." For the purposes of resolving the instant Motion, the Court will assume *arguendo* that the "communication blackout" is not time barred and address whether it qualifies as an adverse employment action.

13

telework request, (despite Plaintiff's alleged medical need to continue working remotely); and (2) Defendant's efforts to stop Plaintiff from taking steps to continue teaching some of his students after his telework request was denied. Upon review of the Complaint and construing the facts in Plaintiff's favor, Plaintiff alleges that Paint Branch's Principal informed him that he needed to discontinue telework and return to in-person instruction on April 23, 2021. (Complaint, p. 5). Thereafter, on April 26, 2021, Paint Branch discontinued Plaintiff's ability to work remotely and "revers[ed] methodology regarding actions that would be engaged by Plaintiff to facilitate the teaching of at least one section of a class…." (Complaint, p. 6). Thus, the Court finds that these acts took place after December 3, 2020 and are not time barred.

As to all three remaining allegations[5], the Plaintiff must establish that the retaliatory conduct: (1) qualifies as an "adverse employment action;" and (2) that a causal nexus exists between the retaliatory conduct and the protected activity. As held above, in the context of a retaliation claim, the standard for an adverse employment action is lower than when assessing a disparate treatment claim. *See Rodgers*, 586 F. Supp. 3d at 446 (an adverse employment action need only be an act that would dissuade a reasonable worker from engaging in a protected activity).

Here, the Court finds that all three remaining allegations do qualify as adverse employment actions for the purposes of a retaliation claim. Plaintiff alleges that: he was prevented from teleworking, despite a medical need to do so; when he tried to find alternative ways to teach his students, Paint Branch deliberately precluded him from continuing his work; and the Defendant imposed a "communication blackout." Construing the facts in the Plaintiff's favor at this juncture, as the Court must, Plaintiff plausibly alleges more than "minor annoyances," which are not actionable, he alleges actions "that are likely to deter victims of discrimination" from taking

---

[5] *See* n.4. *supra*.

responsive action. *See Howerton v. Bd. Of Educ of Prince George's Cnty.*, Civ. No. TDC-14-242, 2015 WL 4994536, at *17 (D. Md. Aug. 19, 2015) (internal citations omitted); *see also Smith v. Bd. of Ed. of Prince George's Cnty.*, Civ. No. GJH 16-206, 2016 WL 4014563, at *5 (D. Md. July 26, 2016) (finding that many courts have mistakenly applied the restrictive definition of "adverse employment actions" related to disparate treatment in the context of retaliation claims and that the bar is much lower in the retaliation context).

  The Court does not find, however, that Plaintiff has plausibly established a causal nexus between the protected activity and the following adverse employment actions: (a) the denial of Plaintiff's telework request; and (b) Paint Branch taking deliberate steps to prevent Plaintiff from continuing teaching his students through alternative means. First, the Plaintiff does not allege "existence of facts that show that the protected activity caused the adverse action." *Johnson*, 839 F. App'x at 784. Next, the Court finds no temporal proximity sufficient to plausibly establish causation. The Plaintiff asserts that he engaged in a protected activity on October 28, 2020. The alleged adverse employment actions did not occur until April 2021, roughly five months later. A gap of five months between an individual engaging in a protected activity and an adverse employment action is insufficient to establish a causal nexus. *Roberts*, 998 F.3d at 127 ("[A] period of longer than two months between the protected activity and the adverse action 'significantly weakens the inference of causation'") (internal citation omitted); *Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012) ("Although neither we nor the Supreme Court have adopted a bright temporal line, we have held that a three- or four-month lapse between the protected activities and discharge was 'too long to establish a causal connection by temporal proximity alone'") (internal citations omitted).

Accordingly, even when viewing the facts in the light most favorable to Plaintiff, the Court finds that the Plaintiff failed to plausibly allege Title VII retaliation related to the Defendant's alleged denial of his telework request or the alleged "reversal of methodology," and the Motion is granted with respect to those two undated remaining allegations.

Finally, regarding the third remaining allegation (the Defendant ignored Plaintiff's questions and imposed a "communication blackout"), the Court finds that it cannot discern when this undated conduct occurred, nor whether it occurred more than once. However, at this procedural juncture, if Plaintiff were granted leave to amend the Complaint to include specific dates related to the so-called "communication blackout," the Complaint could plausibly allege a viable retaliation claim. Given Plaintiff's *pro se* status, and the fact that Plaintiff has yet to file an amended complaint in this case, the Court finds that Fed. R. Civ. P. 15(a)(2) and "justice so requires" that Plaintiff be given the opportunity to amend his Complaint to include specific dates regarding the "communication blackout" and specific allegations pertaining to his attempts to communicate with Paint Branch staff related thereto.

In permitting amendment to the Complaint on this limited factual issue, the Court holds that there has been no bad faith by the Plaintiff nor any prejudice that will flow to the Defendant. Similarly, permitting amendment would not be futile. *See Nourisan Rug Corp.*, 535 F.3d at 298.

In sum, the Court further grants the Motion to Amend to also allow Plaintiff to plausibly-allege facts related to the "communication blackout." Accordingly, the Motion to Dismiss is denied only as to this "communication blackout" allegation.

### C.  Section 1983 Claim

The Defendant argues that the Plaintiff's Section 1983 claim must be dismissed because: (1) Plaintiff is precluded from raising a Section 1983 claim as it is duplicative of his Title VII race

16

discrimination claim; and (2) Section 1983 only applies to "persons" and the Board of Education for Montgomery County is not a person. (Motion, pp. 8-9).

Here, the Court finds that the Section 1983 claim must be dismissed because the Defendant is not a "person" as required by Section 1983. As the Defendant correctly argues, various courts have found that school boards, such as the Board of Education for Montgomery County, are arms of the state and therefore not subject to liability under Section 1983. *See, e.g*, *Mee v. Hubbard*, Civ. No. MJG-02–1750, 2003 WL 22571715, at *3 (D. Md. Feb. 3, 2003) ("It is well established that states and "arms of the state" are not "persons" for § 1983 purposes, and thus are not subject to suit under the statute … further, "[i]t is well-established that Maryland county school boards are state entities" or agents of the state"); *Rosenfeld v. Montgomery County Pub. Schs.*, 41 F. Supp. 2d 581, 586 (D. Md. 1999) (same); *Jones v. Frederick County Board of Educ.*, 689 F. Supp. 535, 537–38 (D. Md. 1988) (same); *see also Zimmer-Rubert v. Board of Educ. Of Balt. Cnty.*, 947 A.2d 135, 141 (Md. 2008) ("The Court of Appeals undoubtedly considers county school boards instrumentalities of the State").

Accordingly, the Defendant's Motion is granted with respect to Plaintiff's Section 1983 claim.

### D.  Negligence, Breach of Contract, Punitive Damages Claims

As to the remaining claims, the Court finds that they all must be dismissed due to a lack of subject matter jurisdiction. Although the Defendant ostensibly, even when raising an immunity defense related to the Plaintiff's gross negligence and punitive damages claims, seeks dismissal on Fed. R. Civ. P. 12(b)(6) grounds, the Court maintains an obligation to ensure that it has subject matter jurisdiction at all times. *See* Fed. R. Civ. P. 12(h)(3); *see also Cook v. Georgetown Steel*

*Corp.*, 770 F.2d 1272, 1274 (4th Cir. 1985) (finding that even if the parties believe that the court has jurisdiction, the court is under a duty to review subject matter jurisdiction).

In this case, as held above, the BOE is an "arm of the state." *Zimmer-Rubert*, *supra*, at 141. As such, it is entitled to sovereign immunity from tort and contract actions. *Id.* (finding that county school board is entitled to sovereign immunity); *see also Donlon v. Montgomery Cnty. Pub. Schs*, 188 A.3d 949, 964 (Md. 2018) ("[F]or purposes of Eleventh Amendment/sovereign immunity analysis, local boards of education are entities of State government"); *Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 248, n. 5 (4th Cir. 2012) ("We agree with the courts that have evaluated the foregoing factors and concluded that the State exercises a significant degree of control over boards of education and that Maryland law treats them as instrumentalities of the State"). The Court recognizes that the Maryland legislature enacted the Maryland Tort Claims Act, which includes a limited waiver of sovereign immunity pertaining to contract and tort actions. MD. CODE ANN. STATE GOV'T § 12-104 (West 2023) (limited waiver related to tort actions); MD. CODE ANN. STATE GOV'T § 12-201 (West 2023) (limited waiver related to contract actions). However, such waiver pertains solely to actions brought in *state* court. *See Hartman v. Univ. of Md. at Balt.*, Civ. No. ELH-10-2041, 2013 WL 6858854, at *4 (D. Md. Dec. 20, 2013) ("The Maryland legislature explicitly limited its waiver of sovereign immunity to cases filed in state court. For example, Maryland's waiver of sovereign immunity in tort cases, [] § 12–104, provides that 'the immunity of the State and of its units is waived as to a tort action, in a court of the State' … Likewise, Maryland's waiver of sovereign immunity in contract actions, [] § 12–201, provides that 'the State, its officers, and its units may not raise the defense of sovereign immunity in a contract action, in a court of the State….'").

As such, the BOE, as an arm of the state, retains sovereign immunity in *federal court* for both tort and contract actions. *Id.* Similarly, the Court finds that arms of the state, in Maryland, retain sovereign immunity from punitive damages claims, so any such claim must be dismissed. *See* MD. CODE ANN. STATE GOV'T § 5-522(a),(d) (West 2023) (the state does not waive immunity with respect to punitive damages in tort or contract).

In sum, even when viewing the facts in the light most favorable to Plaintiff, Plaintiff's negligence, gross negligence, breach of contract, and punitive damages claims must be dismissed. Accordingly, the Motion is granted with respect to these claims.

## V. Conclusion

For the foregoing reasons, the Motion is **DENIED IN PART, GRANTED IN PART** and the Motion to Amend is **GRANTED**.

A separate Order follows.

Dated: June 23, 2023

                                                                 /s/
                                          The Honorable Gina L. Simms
                                          United States Magistrate Judge